# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL ROSENBERG, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11 C 2493 |
| ) | |
| ADVOCATE HEALTH AND HOSPITALS ) | Honorable Joan B. Gottschall |
| CORPORATION, doing business as ADVOCATE ) | |
| GOOD SHEPHERD HOSPITAL, the ) | |
| GOVERNING COUNCIL OF ADVOCATE ) | |
| GOOD SHEPHERD HOSPITAL, and DOUGLAS ) | |
| TOMASIAN, M.D., in his individual capacity, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is Michael Rosenberg's Emergency Motion to Remand to the Nineteenth Judicial Circuit of Lake County, Illinois. For the reasons that follow, the motion is granted.

## BACKGROUND

On April 12, 2011, Rosenberg, a cardiologist, brought a three-count civil complaint in the Circuit Court for the Nineteenth Judicial District of Lake County, Illinois against Advocate Health and Hospitals Corporation, the Governing Council of Advocate Good Shepherd Hospital ("AGSH"), and Douglas Tomasian (collectively, the "defendants"), alleging that they breached the AGSH Medical Staff Bylaws (a contract), violated his fundamental right to a fair hearing, and violated the Illinois Hospital Licensing Act, 201 Ill. Comp. Stat. 85/10.4(b)(2)(c) by failing to follow the proper procedures in revoking his clinical privileges, without which, Rosenberg alleges, he would be effectively precluded from practicing medicine. In setting forth the facts underlying his claims, Rosenberg refers to the Health Care Quality Improvement Act ("HCQIA"), 42 U.S.C. §§ 11101-11152, which requires the defendants to report the revocation

of his clinical privileges to the National Practitioner Data Bank ("NPDB").  The NPDB "collects and disseminates allegations of physician misconduct." *Frakes v. Crete Carrier Corp.*, 579 F.3d 426, 433 n.6 (5th Cir. 2009); *see* 45 C.F.R. § 60.1 (explaining the function of the NPDB).  In each count, Rosenberg asks the court to grant him a "temporary, preliminary, and permanent injunction prohibiting AGSH Hospital . . . from . . . reporting to any person or third party the decision to revoke Dr. Rosenberg's clinical privileges in interventional cardiology." (Compl. at 20, 33, 36.)  Rosenberg contends that the reporting of the revocation to the NPDB will harm his future employment prospects.

The next day, on April 13, 2011, the defendants removed the case to federal court, asserting in their Notice of Removal that the case originally could have been brought in federal court because there is federal question jurisdiction since Rosenberg's complaint requires interpretation of the reporting requirements of a federal law – the HCQIA.  The day after that, on April 14, 2011, Rosenberg filed his emergency motion to remand the case to state court, disputing the defendants' contention that there is federal question jurisdiction.

## LEGAL STANDARD

The defendants' removal was proper if Rosenberg's suit originally could have been brought in this court.  *See* 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."); *see also Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Only state court actions that originally could have been filed in federal court may be removed to federal court by the defendant." (citing 28 U.S.C. § 1441(a))).  The parties do not contend that there is

2

diversity jurisdiction, so the defendants' claim that removal was proper rests on their argument that there is federal question jurisdiction.

A district court has federal question jurisdiction "of all civil actions arising under the Constitution, laws, and treaties of the United States." 28 U.S.C. § 1331. Under the well-pleaded complaint rule, federal question jurisdiction exists "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar*, 482 U.S. at 392; *see Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908) ("[A] suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution."). A federal question is presented on the face of the complaint where: (1) a plaintiff pleads a cause of action arising under federal law, or (2) "a state law claim necessarily raises a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312, 314 (2005).

## **ANALYSIS**

The defendants argue that this court has federal question jurisdiction over Rosenberg's complaint either: (a) by means of an exception to the well-pleaded complaint rule that allows district courts to assert jurisdiction over claims that arise under state laws that have been completely preempted by federal law, or (b) because Rosenberg's claim for relief presents an embedded federal question within Rosenberg's state law complaint. The court will address each argument in turn.

I.  Rosenberg's state law claims are not completely preempted by federal law and therefore do not fall within an exception to the well-pleaded complaint rule.

"Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393. "Complete preemption, therefore, creates an exception to the rule that courts look only to the plaintiff's well-pleaded complaint to determine whether federal jurisdiction exists." *In re Repository Techs., Inc.*, 601 F.3d 710, 722-23 (7th Cir. 2010). "If the complaint pleads a state-law claim that is completely preempted by federal law, the claim is removable to federal court." *Id.* (quoting *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*, 538 F.3d 594, 596-97 (7th Cir. 2008)).

"Complete preemption 'confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim.'" *In re Repository Techs., Inc.*, 601 F.3d at 722 (quoting *Franciscan Skemp Healthcare, Inc.*, 538 F.3d at 596); *see Rogers v. Tyson Foods, Inc.*, 308 F.3d 785, 787 (7th Cir. 2002) ("Complete, or field, preemption exists where 'Congress has so completely preempted a particular area that no room remains for any state regulation and the complaint would be 'necessarily federal in character.''" (quoting *Bastien v. AT&T Wireless Serv., Inc.*, 205 F.3d 983, 986 (7th Cir. 2000))). As the Seventh Circuit has explained, "We find complete preemption where there is a congressional intent in the enactment of a federal statute not just to provide a federal defense to a state created cause of action but to grant a defendant the ability to remove the adjudication of the cause of action to a federal court *by transforming the state cause of action into a federal cause of action*." *Rogers*, 308 F.3d at 788 (emphasis as in original) (quotations and citations omitted).

4

Thus, "complete preemption would not be appropriate if a federal remedy did not exist in the alternative [to the state law claim]." *Id.* "Otherwise, a plaintiff would be forced into federal court with no relief available for 'vindicating the same interest.'" *Id.* (quoting *Railway Labor Executives Ass'n v. Pittsburgh & L.E.R..R.*, 858 F.2d 936, 942 (3d. Cir. 1988)). "'[U]nless the federal law has created a federal remedy – no matter how limited – the federal law, of necessity, will only arise as a defense to a state law action' and will thus not give rise to the federal question jurisdiction underlying complete preemption." *Id.* (citing *Rice v. Panchal*, 65 F.3d 637, 641 (7th Cir. 1995), and *McQuerry v. Am. Med. Sys., Inc.*, 899 F. Supp. 366, 370 (N.D. Ill. 1995)). Indeed, "[m]ost circuits share [the Seventh Circuit's] view that the existence of a private right of action under federal law is an antecedent of complete preemption." *Id.* (citing *Wayne v. DHL Worldwide Express*, 294 F.3d 1179, 1184 (9th Cir. 2002); *Schmeling v. NORDAM*, 97 F.3d 1336, 1342 (10th Cir. 1996); *Strong v. Telectronics Pacing Sys., Inc.*, 78 F.3d 256, 260 (6th Cir. 1996); *Hudson Ins. Co. v. Am. Elec. Corp.*, 957 F.2d 826, 830 (11th Cir. 1992); *Aaron v. Nat'l Union Fire Ins. Co*., 876 F.2d 1157, 1164-65 (5th Cir. 1989); *Railway Labor Executives Ass'n*, 858 F.2d 936, 942 (3d. Cir. 1988); and noting that *Husmann v. Trans World Airlines, Inc*., 169 F.3d 1151, 1152-54 (8th Cir. 1999), is an exception in which although the court found "complete preemption without discussing whether there was a replacement federal cause of action," a dissenting judge argued that "the defendant's failure to point to a private right of action in the statute should have been fatal to its argument for complete preemption," *Husmann*, 169 F.3d at 1154-55 (Morris Sheppard Arnold, J., dissenting)).

Here, "it appears that every court to address the question of whether the HCQIA provides a private cause of action has come to the same conclusion: it does not." *Westmoreland v. Pleasant Valley Hosp., Inc.*, No. 3:08-1444, 2009 WL 1659835, at *3 (S.D.W.Va. Jun. 12, 2009)

(citing Scott M. Smith, Annotation, Construction and Application of Health Care Quality Improvement Act of 1986, 121 A.L.R. Fed 409 (1994) (updated June 2009), *Singh v. Blue Cross/Blue Shield of Mass., Inc.*, 308 F.3d 25, 45 n.18 (1st Cir. 2002), *Wayne v. Genesis Med. Ctr.*, 140 F.3d 1145, 1148 (8th Cir. 1998), and *Bok v. Mut. Assurance, Inc.*, 119 F.3d 927, 928-29 (11th Cir. 1997)); *see also Shelton v. Schneider*, No. 05 C 5955, 2005 WL 3601934, at *3 (N.D. Ill. Nov. 2, 2005) (the HCQIA "does not explicitly afford aggrieved physicians a cause of action when a hospital fails to follow HCQIA's prescribed peer review procedures"), *Morris v. Emory Clinic, Inc.*, 402 F.3d 1076, 1083 (11th Cir. 2008) ("There is no express private right of action under the HCQIA."), *Diagle v. Stulc*, 694 F. Supp. 2d 30, 35 (D. Me. 2010) ("There is no authority for the proposition that HCQIA creates an independent private cause of action for individuals who claim they were injured as a consequence of a Data Bank report filed in compliance with the HCQIA."), *Badri v. Huron Hosp.*, 691 F. Supp. 2d 744, 769 (N.D. Ohio 2010) ("This Court finds no evidence that Congress intended to create a cause of action for the benefit of physicians, and joins other courts in concluding that 'the HCQIA does not explicitly or implicitly create a private cause of action for physicians subjected to peer review.'" (quoting *Singh*, 308 F.3d at 45 n.18)), *Held v. Decatur Mem. Hosp.*, 16 F. Supp. 2d 975, 1220 (C.D. Ill. 1998) ("Plaintiff has not cited, and this court has not found, any cases reaching a contrary result."). Accordingly, since HCQIA does not provide a private right of action, the defendants' argument that HCQIA completely preempts Rosenberg's state law claims so that Rosenberg's suit falls within the complete preemption exception to the well-pleaded complaint rule is without merit.[1]

---

[1] While unnecessary to this decision, the court notes that the fact that Rosenberg's claims are not completely preempted by HCQIA does not mean that the defendants may not raise *ordinary* preemption – as distinct from complete preemption – as a defense to Rosenberg's prayer for injunctive relief in state court. *See Rogers*, 308 F.3d at 791 (citing *Smith v. GTE Corp.*, 236 F.3d 1292, 1313 (11th Cir. 2001), which states, "[O]ur conclusion that the

II. Rosenberg's state law claims do not contain a substantial embedded federal question over which the court can assert jurisdiction without upsetting the congressionally-approved division of labor between state and federal courts.

Courts have found federal question jurisdiction based on an embedded federal question where the only contested issue was one of federal law, the resolution of the federal issue would be dispositive, and the interpretation of the federal issue would be controlling in numerous other cases. In *Grable*, the Internal Revenue Service ("IRS") seized the real property of Grable & Sons Metal Products, Inc. ("Grable") and sold it at a federal tax sale to satisfy Grable's tax delinquency. Five years later, Grable brought a quiet title action in state court, claiming that the buyer's record title was invalid because the IRS did not notify Grable of the seizure in the manner mandated by a federal tax law, 26 U.S.C. § 6335(a). *Grable*, 545 U.S. at 310-11. The buyer removed the case to federal court, arguing that the case presented a federal question in that the only disputed issue was whether, under federal tax law, the IRS properly gave Grable notice of the seizure. *Id.* The district court declined to remand the case. The Sixth Circuit and the Supreme Court affirmed.

The Supreme Court concluded that the interpretation of the federal law was an essential element of Grable's quiet title action since his claim depended on whether the IRS complied with federal tax law in giving Grable notice of the property seizure. *Id.* at 314-15. The Supreme Court also concluded that the meaning of the federal tax law was "an important issue of federal law," one in which the government has a strong interest. Lastly, the Supreme Court concluded that "because it will be the rare state title case that raises a contested matter of federal law, federal jurisdiction to resolve genuine disagreement over federal tax title provisions will portend

---

complete preemption doctrine does not provide a basis for federal jurisdiction in this action does not preclude the parties from [raising the defense of ordinary preemption in state court.]"); *see also Smith*, 236 F.3d at 1313 ("complete preemption functions as a narrowly drawn means of assessing federal removal jurisdiction, while ordinary preemption operates to dismiss state claims on the merits and may be invoked in either federal or state court.") (citing *Blab T.V. of Mobile, Inc. v. Comcast Cable Commc'ns, Inc.*, 182 F.2d 851, 854-55 (11th Cir. 1999)).

only a microscopic effect on the federal-state division of labor." *Id.* at 315. In other words, allowing a federal court to assert jurisdiction over Grable's case would not open the floodgates to numerous other state court actions, thereby altering the allocation of federal and state power.

On the other hand, the Seventh Circuit declined to find federal question jurisdiction where: (a) the federal question was coupled with issues of state law, and (b) asserting jurisdiction would move an entire category of suits normally litigated in state court into federal court and upset the balance of state and federal authority. *Bennett v. Southwest Airlines Co.*, 484 F.3d 907, 911 (7th Cir. 2007). In *Bennett*, the plaintiffs sued Southwest Airlines, Boeing, and the City of Chicago for injuries caused by a Southwest Airlines flight that, landing in poor weather at Midway International Airport, was unable to come to a stop before passing the end of the runway, broke a fence, and entered the street. *Id.* at 908. The defendants claimed that removal was proper because federal aviation standards played a prominent role in the plaintiffs' claim that Southwest Airlines, Boeing, or the City of Chicago acted negligently. *Id.* The district court denied the plaintiffs' motion to remand, but the Seventh Circuit reversed, reasoning that resolution of the case involved "a fact-specific application of rules that come from both federal and state law rather than a context-free inquiry into the meaning of a federal law." *Id.* at 910. Indeed, "[s]tate issues, such as the amount of damages, may well predominate." *Id.* Moreover, asserting federal jurisdiction over the case "would move a whole category of suits to federal court." *Id.* at 911.

Unlike *Grable* and like *Bennett*, Rosenberg's suit is not one in which the only contested issue is a question of federal law. Rather, Rosenberg has sued the defendants for breach of contract, violation of his fundamental right to a fair hearing under Illinois law, and violation of state law (specifically, the Illinois Hospital Licensing Act), alleging that the defendants failed to

follow the proper procedures in revoking his clinical privileges. The desired injunction barring the defendants from reporting the revocation of his clinical privileges is only one of several remedies Rosenberg seeks. Indeed, as in *Bennett*, state law issues overwhelmingly predominate in Rosenberg's case. In addition, asserting jurisdiction here would invite hospitals to remove state law cases to federal court anytime a doctor subject to reportable adverse action complained that his contract rights had been violated or that required procedures had not been followed. Under these circumstances, the assertion of federal question jurisdiction based on an embedded federal question would be inappropriate.

## **CONCLUSION**

For all of the above reasons, the defendants' removal was not proper. Accordingly, Rosenberg's emergency motion to remand the case back to state court is granted forthwith.


ENTER:

>     /s/
> JOAN B. GOTTSCHALL
> United States District Judge

DATED: April 22, 2011